IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | * | |
| GOSPEL RESCUE MINISTRIES OF WASHINGTON, D.C. INC. | * | Case No: 12-00405-SMT (Chapter 11) |
| | * | |
| Debtor | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

DEBTOR'S OBJECTION TO CLAIM OF
SCAFFORD F. FORTE, CPA (Claim No. 29)

Gospel Rescue Ministries of Washington, D.C. Inc., formerly known as Gospel Mission of Washington, D.C. Inc., formerly known as The Gospel Mission, a District of Columbia corporation, the debtor and debtor in possession herein (the "Debtor" or "GRM"), by counsel, pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007, files this Objection to Claim of Scafford F. Forte, CPA ("Claimant") (Claim No. 29), and in support thereof states as follows:

Preliminary Statement

1. The Court should disallow the proof of claim in its entirety by Claimant because Claimant: (a) misrepresented its employee's qualifications, (b) failed to complete the work it was hired to complete, (c) over-billed for services and provided inaccurate and deficient billing statement, and (d) incompetently handled its obligations, including without limitation, the Debtor's payroll, 2010 and 2011 and work related to GRM's tax returns, and audited financials.

Jurisdiction and Venue

2. This Court has jurisdiction over claims filed against the Debtor pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and 11 U.S.C. §§ 501-502.

3. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. This objection is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) arising from and relating to the Chapter 11 case of the Debtor, which is currently pending in this Court.

General Background

5. On May 30, 2012, the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Code"). The Debtor continues in possession of its property and in control of its affairs pursuant to §§ 1107 and 1108 of the Code.

6. This Court has jurisdiction over this objection pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (D).

7. The Debtor is a corporation, organized and existing under the District of Columbia Nonprofit Corporation Act, with its principal place of business in the District of Columbia. The Debtor is a non-denominational Christian social service agency. Founded in 1906, the Debtor provides shelter for the homeless, free meals for the hungry, in-house addiction treatment, and educational opportunities for developing vocational skills.

8. The Debtor hired Claimant to function as the Debtor's external CFO. The terms of the engagement are set forth in that certain engagement letter, dated January 17, 2011, a copy of which is **Exhibit A** hereto and incorporated herein by reference (the "Engagement"). Pursuant to the Engagement, the Claimant was hired to, among other things, manage in-house accounting personnel, develop the annual operating budget, establish internal procedures and controls to ensure regulatory and GAAP compliance, assume responsibility for completing the audit and correcting all adverse audit findings of external auditors, prepare financial reports, maintain financial records, support the development of sound business plans, and review all grants to ensure adherence to terms, compliance, and responsibilities.

9. Claimant staffed the Engagement with two individuals, Mr. Scafford Forte, President and owner ("Forte"), and Mr. Lloyd Anderson, a manager ("Anderson").

10. The Engagement identifies Anderson as a Certified Public Accountant ("CPA") but his license expired on October 31, 1994 for "failure to renew".

11. On September 27, 2012, the Claimant filed its Proof of Claim No. 29 (the "POC") purporting to establish an unsecured claim in the amount of $127,395.50 against the Debtor "for approved contractual services provided" pursuant to the Engagement

12. Forte signed the POC under oath and subject to the penalties of perjury set forth in 18 U.S.C. §§ 152 and 3571.

13. In support of the POC, Claimant attached ten (10) invoices for the period commencing February 1, 2012, and continuing through May 31, 2012. The Claimant attached ten (10) invoices to the proof of claim, each one representing half of a month. The invoices reflect block billing with one entry per day. (e.g., Lloyd Anderson's March 1, 2012 time entry "Meet w/ EM; EH; tele. Discussion w/ S.Forte; G/L accounts review & analysis - 13 hours") . The claim that these services were provided are disputed. The time spent was excessive and of no benefit to GRM.

14. On each invoice Scafford F. Forte ("Forte") billed between 1.5 hours and 6.5 hours for the exact same billing entry; "Telephone communication and discussion with Lloyd Anderson about various meetings and activities required of him by GRM Management and staff." In total Forte billed 42 hours for the aforementioned billing entry on each invoice.

15. According to the invoices, Lloyd Anderson's ("Anderson") billing entries account for the majority of the time billed. For the period February 1, 2012 through February 15, 2012, a period of 15 days, Anderson billed 147.75 hours. His excessive and unsubstantiated billings asserted time for every single day during this period, including Saturdays and Sundays.

16. For the period February 16, 2012 through February 29, 2012, a period of 14 days, Anderson billed 138.5 hours. His excessive and unsubstantiated billings asserted time for every single day during this period, including Saturdays and Sunday.

17. In March 2012, a 31-day period, Anderson billed a total of 282.5 hours.

18. In April 2012, a 30 day period, Anderson billed a total of 216 hours.

19. In May 2013, the Claimant, without explanation, submitted two discrete invoices for the period May 1 – 15, 2012 and two discrete invoices for the period May 16 – 31, 2012. During this 31 day period, Anderson billed a total of 162.75 hours.

20. In total, Anderson billed 947.5 hours during the four months for which invoices were submitted.

3

Legal Standard

21. Section 502(a) of the Bankruptcy Code provides, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." Section 502(b) of the Bankruptcy Code further provides, in relevant part:

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> 1. such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than such claim is contingent or unmatured . . .

22. Bankruptcy Rule 3001 provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Therefore, a properly executed proof of claim shifts the burden of producing evidence to the objector, however the burden of persuasion remains at all times with the claimant. *In re Friedman*, 436 F. Supp. 234, 237 (D. Md. 1977). Once an objecting party overcomes the *prima facie* effect given to the proof of claim, the claimant must prove the validity of the claim by a preponderance of the evidence. *In re Harrison*, 987 F.2d 677 (10th Cir. 1993); *accord In re Allegheny Int'l, Inc.*, 954 F.2d 167, 26 C.B.C.2d 663 (3d Cir. 1992).

23. In order to meet its burden of persuasion, the Claimant must provide an accounting or sufficient detail supporting the amount claimed pursuant to Rule 3001(f).

24. Local Bankruptcy Rule 3007-1(b) states that

> b) an objection to a claim must:
> 1) state with particularity the grounds of the objection;
> 2) set forth the relief requested;
> 3) attached any affidavit (or 28 U.S.C. § 1746 declaration under penalty of perjury) or memorandum filed in support of the objection;
> 4) attach a notice complying with [Official Form 20B];
> 5) include the proposed order required by LBR 9072-1; and

4

6) include a certificate of service complying with LBR 5005-3 and reflecting service as required by [LBR 3007-1(f)][1].

Basis for Relief

**A.    The Claimant's POC Must be Disallowed because Claimant Misrepresented its Qualifications, billed excessive charges, and caused harm to GRM.**

25.     The Claimant's POC must be denied in its entirety by this Court because Claimant misrepresented Anderson's qualification as a CPA and billed excessive amounts of time. Moreover, the time spent was not beneficial to GRM.  In fact, Claimant's inaction and inability to timely and properly complete necessary accounting services caused GRM to suffer damages including penalties being assessed by taxing authorities.

26.     The Claimant's POC must be denied in its entirety by this Court because the work alleged to have been done was not performed properly, nor was it done by a validly licensed CPA.  Anderson is no longer in good standing as a CPA.  According to records from the District of Columbia's website, Lloyd G. Anderson, License No. CPA4332, is inactive for "Failure to Renew."  The expiration date of his license is October 31, 1994.[2]

27.     Anderson falsely held himself out to be a properly licensed CPA.  In Claimant's January 2011 Engagement Letter countersigned by the Debtor's Vice President for Human Resources Management, Forte stresses that,

> The philosophy of the firm is to provide its clients with the highest quality service on a timely and cost-effective basis.  To this end, special care is taken to ensure that only staff members with relevant experience are assigned to engagements received from clients.

Forte also states that,

> The firm requires that each professional member of the staff must adhere to the American Institute of Certified Public Accountants (AICPA) and State Board requirements of

---

[1]  Local Bankruptcy Rule 3007-1(f) states,
   (f) <u>Service</u>.  The objecting party must serve copies of the objection to claim and the papers that must accompany it under paragraph (b) by mailing the copies to the creditor at the address for notices that appears on the proof of claim….

attaining 120 hours of continuing professional education over three years and 80 hours over two years respectively.

28. In Anderson's resume, attached to the Engagement Letter, he states that he is a "[p]roactive and results oriented **CPA** with proven skills…" (emphasis in original). It further identifies Anderson as, "Certified Public Accountant. Washington, DC – 1984." Nowhere does the Engagement mention that Anderson's CPA license expired in 1994 and that he is currently working as an unlicensed CPA.

29. The Debtor hired the Claimant specifically because it required the services and expertise of a licensed CPA. In addition to the misrepresentation of Anderson's qualifications, the Debtor would not have hired Claimant if it had known of Mr. Anderson's long personal history of tax problems. As recently as December 2012, the United States filed a federal tax lien against him in the amount of $346,898.25..

### B. The Claimant's POC Should be Disallowed because the Claimant Failed to Submit Invoices in a Timely Manner

30. The Claimant's POC should be disallowed because the Claimant failed to submit invoices to the Debtor in a timely manner. The Engagement provides that, "[t]he fees incurred will be billed monthly. Payment is due upon receipt." The Claimant submitted the February invoices in mid-May, March and April invoices in mid-June, and May invoices toward the end of June. As a consequence of the delinquent submission of the invoices, the books and records of the Debtor were inaccurate at the time the Debtor filed for bankruptcy on May 30, 2012.

### C. The Claimant's POC Should be Disallowed because the Time Entries and Invoices Lack Sufficient Detail to Verify their Accuracy and Relevance to the Engagement

31. The Claimant's POC should be disallowed because the invoices submitted in support of the POC lack sufficient detail for the Debtor to verify their accuracy and relevance of purported time spent to the terms of the Engagement. In fact, given the amount, frequency and lack of results, all time billed is highly questionable.

32. On each of the ten (10) invoices, Claimant inadequately describes Mr. Forte's time spent as: "Telephone communication and discussion with Lloyd Anderson about various meetings and activities required of him by GRM Management and staff." In total, Claimant invoiced Debtor for 42 hours for this single description. Unfortunately, the formulaic nature of this description prevents the Debtor from verifying the accuracy of the invoice. Further, it fails to describe which of the tasks delineated in the Engagement the purported work relates.

33. Claimant's invoices were also deficient in their detail with respect to time billed for Anderson. The invoices include only one lumped billing entry for Anderson per day, each devoid of the detail and specificity that would be necessary for the Debtor to verify the accuracy of the invoice and/or to identify to what task identified in the Engagement the work relates. The descriptions do not indicate any progress made with respect to the work undertaken. The entries do not describe the assignment on which Anderson was working nor do they reflect the completion of any task. Moreover, GRM had instructed Forte to limit its billings and that direction was completely ignored. What follows are examples of the deficient billing entries by Mr. Anderson:

| Date | Description | Hours |
|---|---|---|
| Friday 2/3/2012 | Meet w/ KR & EM; schedule preparation/review | 13.00 |
| Saturday 2/12/2012 | POC; review RTW schedules w/ EM; APRA review schedules | 6.00 |
| Tuesday 2/21/2012 | G/Ledger review & audit schedule preparation/reconciliation meet w/ Board | 13.50 |
| Wednesday 3/7/2012 | G/L a/c s review &adjustments; Meet with KR' & EM; tel. discussion w/ S. Forte | 9.0 |
| Saturday 3/24/2012 | G/L a/c s review & adjustments; tel discussion w/ SF Investment account analysis; A/R review and reconc | 13.00 |
| Wednesday 4/11/2012 | G/L a/c s review &adjustments; tel discussion w/ SF | 11.00 |
| Thursday 4/12/2012 | audit assistance/preparation/review/meetings | 10.00 |
| Monday 4/23/2012 | audit assistance/preparation/review/meeting; analysis; Admin | 12.00 |

7

| Tuesday 5/8/2012 | audit assistance/preparation/review/-POC; payroll reconciliation review meetings | 5.00 |
|---|---|---|
| Tuesday 5/8/2012 | Draft PPM | 5.00 |
| Thursday 5/31/2012 | Meet w/ EH & EM re bankruptcy status filing; tel meeting w/ EM, MC, EH & Bankruptcy atty re implementation & responsibilities; tel disc w/ SF '11 deposit recon to G ledger | 8 |

34. Anderson's entries are often repetitive, inscrutable, and do not indicate any progress made with respect to his assignments. The billing entries do not show what stages of each assignment he was working on or reflect the completion of any specific task.

35. These cryptic billing entries take on an increased importance because Anderson failed to complete the work he was assigned by the Debtor. Had Anderson completed the work assigned to him and had Forte properly supervised his employee, then the deficient time entries would not have taken on their heightened significance. The inscrutable billing entries are indicative of the overall failure of Claimant to competently provide any of the services with which it was tasked.

**D.    POC Should be Disallowed because the Claimant Failed to Competently Perform the Work it was Hired to Complete**

36. The Claimant's POC should be disallowed because the Claimant failed to competently perform and complete the scope of work identified in the Engagement. The Engagement identifies several "tasks" for the Claimant. Claimant failed to competently perform and complete these tasks.

37. For example, under Task 1, Claimant stated that it would "[a]ddress compliance issues raised by APRA." Under Task 4, Claimant states that it would "[e]nsure that GRM meets all regulatory requirements to operate as a financially viable ministry," "[r]eveiw all grant documents to ensure terms, compliance and responsibilities are being adhered to," and "[r]eview the financial section of all grant documents before submission to ensure that GRM is equipped to carry out grant requirements in accordance with laws, regulations, contracts, and grant agreements. Ensure that appropriate accounting systems and controls are in place and implemented for the proper management of all local, state and Federal funded programs."

8

38. Engagement provides that Claimant will ensure that the Debtor remains in compliance with the requirements of the District of Columbia Department of Health Addiction Prevention and Recovery Administration ("APRA") in order for the Debtor to continue as an APRA grant recipient. Unfortunately, due to Claimant's failure to assist in the timely filing of the 2010 taxes with the IRS and its failure to properly administer the Debtor's payroll among other things, the Debtor fell out of compliance with APRA requirements thereby jeopardizing the Debtor's ability to secure APRA grants going forward. These failures have cost the Debtor time and additional monies to rectify.

39. Another of the Claimant's tasks under the Engagement was to assist the with the Debtor's payroll. Indeed, several of Anderson's time entries appear to reflect work on the payroll. However, during the Engagement the Debtor's payroll was not administered in a manner that complied with applicable law. Specifically, Claimant failed to ensure that Debtor's payroll trust fund taxes were paid. This resulted in the assessment of significant interest and penalties being assessed against the Debtor.

40. As a consequence, the IRS has also assessed a 100% penalty of approximately $163,000 against certain of the Debtor's employees. The investigation has caused much stress for the aforementioned employees. Consequently, the Claimant's failure to properly oversee the payroll has caused the Debtor to expend substantial time, energy and expense.

41. In addition, as a result of Claimant's failings, GRM did not timely complete and file the 2010 tax returns. As a result of this failure, the IRS has levied a penalty against Debtor in the approximate amount of $37,000.00.

42. The Claimant failed to complete its work with respect to the information required for the audit financials.

43. As these numerous examples demonstrate, the Claimant has caused the Debtor substantial harm by failing to competently perform and complete the tasks identified in the Engagement. For this reason, this Court should disallow the Claimant's POC in full.

WHEREFORE, for the reasons stated herein, Gospel Rescue Ministries of Washington, D.C. Inc. respectfully requests that the Court enter an Order:

    A.    Sustaining the Objection;

    B.    Disallowing Claim No. 29 of Scafford F. Forte, CPA; and

    C.    Granting such other and further relief as the Court deems just and proper.

*/s/ Paul Sweeney*
Paul Sweeney, 429738
Camille G. Fesche, MD29979
Yumkas, Vidmar & Sweeney, LLC
2530 Riva Road, Suite 400
Annapolis, Maryland 21401
(443) 569-5972
psweeney@yvslaw.com

Counsel for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of March 2013, notice of filing of the Debtor's Objection to Claim of Scafford F. Forte, CPA (Claim No. 29) (the "Motion") was sent electronically to those parties listed on the docket as being entitled to such electronic notice, and a copy of the Motion was mailed first class, postage prepaid as follows:

Mr. Scafford F. Forte, CPA
President, Owner
Scafford F. Forte, CPA
914 Silver Spring Avenue, #204
Silver Spring, MD  20910

Mr. Lloyd Anderson
c/o Scafford F. Forte, CPA
914 Silver Spring Avenue, #204
Silver Spring, MD  20910

*/s/ Paul Sweeney*
Paul Sweeney